BOLIN, Judge.
West Monroe Real Estate Company, Inc., plaintiff’s assignor, entered into a written contract with defendants. The general purpose of the contract was for the West Monroe Real Estate Company to provide water and sewerage service to houses which were to be constructed in a proposed subdivision to be developed by defendants. The sewerage portion of the contract was assigned to D’Arbonne Sewerage Company on September 15, 1969. A dispute arose between plaintiff and defendants concerning the interpretation of the contract and acts of the parties performed in connection with the contract. Plaintiff instituted the present suit against defendants for $7,500, allegedly due it under the contract, plus attorney’s fees and special damages. Plaintiff further sought an injunction to prohibit de *419 fendants from continuing to use plaintiff’s sewer system in violation of the contract. Defendants reconvened seeking damages of $7,500. From judgment in favor of plaintiff against defendants in solido for $7,500, and rejecting all other demands, defendants appeal.
For reasons hereinafter expressed, we hold the lower court erroneously construed the contract and, accordingly, the amount of the judgment should be reduced.
The contract is brief and the portion which is involved in this case provides:
“WHEREAS, Sanders plan to develop certain property which lies East of D’Arbonne Street and South of Tennessee Gas Pipe Line, and Sanders and West Monroe Real Estate Company, Inc. hereby agree as follows:
“A. West Monroe Real Estate Company, Inc. will permit up to fifty (50) houses to tap on its water and sewer lines, after sewer and water lines are engineered and laid of equal quality and workmanship of Unit No. 1 and 2 of D’Ar-bonne Hills Subdivision and inspected and approved by George M. Cox.
“B. Plats, right-of-way easements will be made and the entire water and sewer systems deeded to West Monroe Real Estate Company, Inc.
“C. These house taps are to be paid in Lots of 12, 13 and 25 at the rate of One Hundred Fifty ($150.00) Dollars each, as follows:
1st. 12 houses of $1,800.00 at the first house need
2nd. 13 houses of $1,950.00 at the first house need
Six months notice and $3,750.00 must be given for the last 25 houses.
“D. Water lines are to be tapped and copper goose neck with valve and box set. Box to be furnished by West Monroe Real Estate Company, Inc.
“E. The above figures do not include the regular ninety ($90.00) Dollar sewer tap, water tap, and inspection fee, which is paid by the plumber.
“F. This contract expires three (3) years from February 1, 1968.
“G. All expense involved in this contract will be at the cost of the developer.
“It is further agreed and understood that Sanders assume no responsibility for the water and sewerage systems.
“THUS DONE AND PASSED before me, Notary, and the two undersigned competent witnesses on this 1st day of July, 1968.”
Plaintiff expanded its sewer system sufficiently to handle the fifty houses which defendants contemplated building on the property in Unit No. 4. Defendants, on the other hand, laid and constructed sewer lines on their property which they contend met the specifications called for in the contract. George Cox, president and owner of the sewerage company, inspected the lines laid by defendants and claimed they did not comply with the specifications. A dispute arose because the plaintiff company refused to allow houses constructed by defendants to be “tapped” onto the system. Defendants caused George Cox to appear before the Louisiana Public Service Commission on numerous occasions. These hearings resulted in the Commission ordering plaintiff company to allow the houses to be connected to the system.
The record shows that on February 1, 1971, the specified date for the ending of the contract, there were only twelve houses using plaintiff’s facilities. However, on the date of trial there were twenty-four houses using the sewer service. The trial judge interpreted the contract to mean that plaintiff was obligated to provide ample *420 water and sewerage facilities to defendants within the three year period and that this had been done. He further found that the $7,500 consideration was to be paid plaintiff for having these facilities available within three years to serve fifty houses to be built by defendants, and upon elapse of the period the total sum was due.
Defendants delineate the following as issues presented on appeal:
(1) Can a public utility subject to regulation by the Louisiana Public Service Commission contract in such fashion as to limit its obligation to provide services to the public?
(2) Is a contract which depends solely upon the whims of the obligor legally enforceable against the obligee?
(3) Has plaintiff performed its part of the contract so as to allow recovery against defendants?
(4) Assuming plaintiff is allowed recovery, to what sum is it entitled under the contract?
We consider first the question of whether plaintiff, being a public utility, may legally enter into a contract with defendants to expand its facilities. Relative to the issue, we find the cases of Louisiana Gas Service Company v. Louisiana Public Service Commission, 245 La. 1029, 162 So. 2d 555 (1964); Waterworks District No. 3 of Rapides Parish, Louisiana v. City of Alexandria, 236 La. 804, 109 So.2d 426 (1959); Shreveport Traction Co. v. City of Shreveport et al., 122 La. 1, 47 So. 40 (1908), hold such contracts are legally permissible, and the argument to the contrary is without merit.
The contention that the contract is unenforceable because its compliance depended entirely upon the whims of George Cox is based upon Louisiana Civil Code Article 2034 which provides:
“Every obligation is null, that has been contracted, on a potestative condition, on the part of him w?jo binds himself.”
We are of the opinion this argument is unfounded. The courts of Louisiana have upheld contracts containing similar provisions. Arkansas Fuel Oil Corporation v. Maggio (La.App. 4th Cir. 1962), 141 So.2d 516; Whited & Wheless, Limited v. Calhoun, 122 La. 100, 47 So. 415 (1908). In Whited the court said:
“ . . .It [plaintiff] could be made by Calhoun to comply with those obligations, even though the title was not ‘satisfactory’ to it, if in point of law it was one which it should legally have been satisfied with . . . .”
By analogy plaintiff could have been, and in fact was, made to comply with its obligation in this case. The Public Service Commission, while denying its jurisdiction to interpret the contract, found plaintiff to be a public utility and, as such, had an obligation to the public to extend its services whenever economically feasible to do so. Finding defendants had paid for all the mains, connections and labor involved, the Commission concluded it was economically feasible in this case.
Cox took the position in the beginning of the controversy and at the time of trial that the system constructed by defendants on (their property did not meet the specifications of the contract as required in Section A. However, the Public Service Commission was of the opinion the lines of defendants met the necessary qualifications. Witnesses who testified during the trial of the case convince us defendants’ sewerage lines were built and constructed in accordance with specifications in the contract and Cox was therefore legally obligated to allow defendants to connect the houses onto his company’s sewer system.
The portion of the contract we find most difficult to interpret is Section F, which provides, “This contract expires three. (3) years from February 1, 1968”. Plaintiff advances the argument, which was adopted by the lower court, that on the expiration date defendants were obligated *421 to pay the total price just as though fifty houses had been “tapped” onto its water and sewer lines, regardless of the actual number of houses being serviced by the line. There was much testimony introduced by both parties in an effort to show the intentions of the parties to the contract in question. There is a general principle of law that a contract should be interpreted in its entirety and, further, that it should be interpreted in such a manner as to comply with the intentions of the parties while, at the same time, giving its provisions a reasonable meaning. We think Section F, providing the termination date of the contract, is clear and unambiguous when taken alone; however, when superimposed upon the other provisions of the contract the problem of interpretation becomes more complicated.
The utility company had the obligation of maintaining and expanding its sewer system in order adequately to serve D’Arbonne Hills Unit No. 4 by February 1, 1971. It further was obliged, under Section A of the contract, to “permit” defendants to connect a specified number of “houses” onto the system at the rates set forth in the contract. Defendants had the obligation of laying and constructing sewer lines according to certain specifications within the time permitted under the contract; and, further, of paying for any and all houses connected to plaintiff’s system at the rates set forth in the contract. On February 1, 1971, although the contract ended by its terms, nevertheless plaintiff, as a public utility, had the obligation to continue maintenance of its existing facility and to allow the “tapping on” of other houses as the need for service arose. The evidence reflects defendants connected additional houses to plaintiff’s system after the termination date and under law and equity they have a quasi-contractual duty to pay for these houses at the rate specified in the written agreement.
Therefore, on the date of trial we find the contract between the parties had terminated; that defendants had connected twenty-four houses to plaintiff’s system and owed plaintiff $150 each for the first twelve houses, or $1800, and $1950 for the next twelve hpuses, or a total of $3750. Defendants tendered plaintiff the sum of $1800 as payment for the first twelve' houses, which tender was refused. The record also shows defendants executed an authentic act of conveyance to West Monroe Real Estate Company, Inc., of the water and sewer lines which they had constructed. This deed was refused by plaintiff.
Since the contract has ended, the service to be rendered by plaintiff as a public utility company to defendants or any other residents of Unit No. 4 will in the future be regulated by the Louisiana Public Service Commission. These regulations will of necessity include the rates to be paid to the utility company by each house owner for connection fees, monthly service, etc.
For the reasons assigned the judgment appealed from is annulled and set aside and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, D’Arbonne Sewerage, Inc., and against defendants, Medorah Head Sanders, Jerry Head Sanders and Thomas Alva Sanders, Jr., in solido, in the full sum of Three Thousand Seven Hundred Fifty and no/100 ($3,750.00) Dollars with legal interest on the sum of One Thousand Nine Hundred Fifty and no/100 ($1,950.00) Dollars from judicial demand until paid.
It is further ordered that the deed from defendants to West Monroe Real Estate Company, Inc., dated March 11, 1969, of the water lines, sewer lines and servitudes located in Unit No. 4 of D’Arbonne Hills Subdivision, be approved and it is hereby ordered to be filed for record in the Conveyance Records of Ouachita Parish, Louisiana.
All other demands of the parties are rejected. All costs, including the costs of this appeal, are to be paid one-half by plaintiff and one-half by defendants.