SAM'S STYLE SHOP d/b/a Sam's Women's Apparel

v.

COSMOS BROADCASTING CORPORATION.

Civ. A. No. 78–2974.

United States District Court, E. D. Louisiana.

June 12, 1980.

Harvey J. Lewis and Catherine Leary of Kierr, Gainsburgh, Benjamin, Fallon & Lewis, New Orleans, La., for plaintiff.

A. Justin Ourso, III and Stephen B. Lemann of Monroe & Lemann, New Orleans, La., for defendant.

CHARLES SCHWARTZ, Jr., District Judge.

This matter came on for hearing on a former day on motion of the defendant for summary judgment. Solely for the purposes of this motion, the parties have jointly stipulated that there is no genuine issue of fact to be tried by the Court and the relevant facts are as follows:

The parties entered into an agreement, the terms of which are set forth in a written contract known as a "confirmation order", a copy of which is attached as Exhibit A. This agreement followed discussions between Craig Bourgeois, advertising agent for plaintiff, and John Parham, a sales representative of WDSU–TV whose license is owned by the defendant, concerning plaintiff's desire to broadcast retail comparative price advertising in the New Orleans area.

On October 19, 1977, the station, as was its custom, printed an advertising time schedule on the confirmation order and forwarded three copies of the order to Mr. Parham who sent two of them to Mr. Bour-

geois (who, having dealt with the station before, was familiar with the document).

Shortly thereafter, on October 24 or 25, Mr. Bourgeois produced certain retail comparative price advertising spots that conformed with the parties' agreement with respect to content and in the late afternoon of October 26, 1977 sent them from Pensacola, Florida to New Orleans by bus.

The schedule of advertising time in the confirmation order, dated October 19, 1977, placed the first of plaintiff's spots in a slot between 3:00 P.M. and 4:57 P.M. on October 26, 1977.

Upon arriving at the station on the afternoon of October 26th, the spots were immediately screened by John Parham, Rick Levy, local sales manager, and Dick Wexo, general sales manager. After viewing the spots, Mr. Wexo, relying on paragraph 8(d) of the confirmation order, decided that the station would not broadcast any retail comparative price advertising commercial material and rejected those supplied by the plaintiff. Prior to the commercial material made subject of this litigation, the station had never been asked to consider retail comparative price advertising by any advertising customer.

At approximately 3:40 P.M. on October 26, 1977, Mr. Parham called the Bourgeois agency to inform Mr. Bourgeois of said decision. Unable to reach him, Mr. Parham left word with Mr. Bourgeois' answering service. The two spoke the next day when Mr. Parham informed Mr. Bourgeois of the station's decision.

The parties further stipulated for the purposes of this motion, that if the Court finds that defendant did not breach the aforementioned October 1977 contract, then defendant has not breached the March 1978 contract, which is also made subject of this lawsuit.

On moving for summary judgment, the defendant asks the Court to interpret subparagraph 8(d) of the confirmation agreement which reads as follows:

"Television program and commercial material provided by AGENCY (plaintiff herein) is subject to STATION (defendant herein) approval and STATION may exercise a continuing right to reject such material including a right to reject for unsatisfactory technical quality. . . .
In the event the commercial material is unsatisfactory, STATION shall notify AGENCY by collect telegram and unless AGENCY furnishes satisfactory material 24 hours prior to telecast time, this contract may be terminated by either party without penalty to either party."

Defendant maintains that this provision gives the station complete discretion in deciding whether to broadcast commercial material submitted by its advertising clients. Such an interpretation would obligate the plaintiff to perform by furnishing advertising material for the scheduled time, but would grant the defendant the unrestricted option to approve or disapprove the submitted advertising for any reason whatsoever.

In support of this contention, defendant argues that the condition in the contract at issue is a purely potestative suspensive condition modifying the obligation of the obligor. The legal effect of such condition is to suspend the obligation of the obligor in whose favor the condition runs, until the obligor elects to be bound. If the obligor chooses not to be bound then his obligation is null and unenforceable.[1] The courts have defined the purely potestative

1. Art. 2024. "The potestative condition is that which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or to hinder."
Art. 2034. "Every obligation is null, that has been contracted, on a potestative condition, on the part of him who binds himself."
Art. 2035. "The last preceding article is limited to potestative conditions, which make the obligation depend solely on the exercise of the obligor's will; but if the condition be, that the obligor shall do or not do a certain act, although the doing of the act depends on the will of the obligor, yet the obligation depending on such condition, is not void."
Art. 2036. "An obligation may also be made, by consent of the parties, to depend on the will of the obligee for its duration."

condition as depending solely on the will, whim or caprice of the obligor. *Robinson v. Bensabat,* 87 So.2d 153 (La.App. 1st Cir. 1956); *Stephen L. Guice and Co. v. Perkowski,* 12 So.2d 692, 696–698 (La.App.Orl.1943).

While the Court agrees with the defendant's analysis of the legal effects of a purely potestative condition in the hands of the obligor,[2] we cannot accept the characterization of this condition as purely potestative which would afford defendant's obligation the nullity of Art. 2034.

■ The condition under consideration is properly characterized as a simple potestative condition which according to Art. 2035 does not nullify the obligation. The simple potestative condition calls upon the *obligor* to perform some act prior to the execution of the obligation. It therefore does not suspend the formation of the obligor's obligation but suspends the execution of the obligation.[3] Performance is not totally dependent on the obligor's will, "[but] imposes on the obligor the duty of fulfilling it or of making a sincere effort [to fulfill it]." *Stephen L. Guice and Co., Inc. v. Perkowski, supra.*

■ Specifically, the only reasonable interpretation of the right of defendant pursuant to Subparagraph 8(d) to reject certain commercial material is that such right does not depend solely upon the exercise of the station's will, but is limited by defendant's implied duty to act reasonably and in accordance with objective standards employed in the television industry. Moreover, a contrary conclusion could only be reached by a strained interpretation of this subparagraph which includes as a specific cause (or example) for rejection "unsatisfactory technical quality." This conclusion is buttressed by an examination of the contract in its entirety and with particular reference to the provisions of Subparagraph 2(a), 2(b) and 2(c):

"(a) Commercial announcements or programs of less than 5 minutes duration may be cancelled by STATION or AGENCY upon 14 days prior notice but no such cancellation shall be effective until 28 days after start of telecasting, hereunder unless otherwise stated on face of confirmation.

(b) Programs of 5 minutes or more duration may be cancelled by STATION or AGENCY upon such prior notice as stated on the face of confirmation.

(c) If AGENCY cancels contract earned rates will apply. If STATION cancels contract AGENCY shall have the benefit of the same discounts which it would have earned had it been allowed to complete the contract."

■ Thus, if defendant, as it contends, has the right to cancel any material at any time pursuant to Subparagraph 8(d) then Subparagraph 2 is surplusage and meaningless. Moreover, the designations which the defendant, as drafter of the contract, ascribes to Subparagraph 2 which is entitled "TERMINATION" when compared to the Subparagraph 8 which is entitled "PROGRAM AND MATERIAL," refute any contention that this paragraph was intended as a "catch all" to grant the station an unrestricted right to cancel for any reason whatsoever notwithstanding any other provisions of the contract. If this was the intention of the station it would have been a simple matter for the drafters of the contract to articulate such in clear and unambiguous language.[4]

---

2. *See: Weil Bros. Cotton, Inc. v. Kennington,* 301 So.2d 400 (La.App. 2nd Cir. 1974) and cases cited therein; *Palmer and Plauche, A Review of the Louisiana Law on Potestative Conditions,* 47 Tul.L.Rev. 284 (1973); Note, 49 Tul.L.Rev. 1167 (1975).

3. For a complete discussion of the distinction between pure and simple potestative conditions, *see: Palmer and Plauche, supra,* at pp. 296–301.

4. When there is doubt as to the meaning of a provision in a contract it should be construed against the party who prepared it. *C. C. Carpenter v. Leon E. Werntz and Associates, Inc.,* 345 So.2d 1018 (La.App. 2nd Cir. 1977); *Kuhn v. Stan A. Plauche Real Estate Co.,* 249 La. 85, 185 So.2d 210 (1966); La.C.C. Articles 1957, 1958.

It is hornbook law that an interpretation of a contract which preserves it is preferable to one which renders it void. *Texaco, Inc. v. Vermillion Parish School Board*, 244 La. 408, 152 So. 541, 547–548 (1963); *Sporl v. New York Indemnity Co.*, 176 La. 363, 145 So. 771, 772 (1932). La.C.C. Articles 1945, 1951.

Louisiana courts have on numerous occasions sustained the obligations of the contracting parties by concluding that analogous provisions of certain contracts were simple potestative conditions rather than pure potestative conditions.[5] In *Colbert v. District Grand Lodge*, 178 So. 694 (La.App. 1st Cir. 1937), the plaintiff, as beneficiary, sued to recover death benefits due her on a membership certificate issued by defendant, a fraternal order, to her decedent husband. In its original opinion the Court held that she could not recover on this claim because she had novated the original debt by entering into a contract settling her claim. The settlement was in the form of a loan agreement whereby plaintiff agreed to accept $100 in part payment of her original claim and to loan the balance of her claim to the defendant at a fixed rate of interest. Repayment was to be made when the defendant was financially able to do so. On rehearing the plaintiff sought to set aside the settlement agreement arguing that the contract was null because the condition of repayment was a pure potestative condition whereby the obligation to repay the debt was solely in the discretion of the defendant. Rejecting this argument, the Court concluded that, although defendant could avoid its obligation to plaintiff pursuant to the loan agreement by failing to conduct its business in a manner designed to maintain solvency, it was unreasonable to imply that defendant would pursue such course of conduct simply to avoid paying the loan. Consequently, the Court found as a practical

matter that the condition was not dependent solely upon the whim of this obligor.

Similarly, in *Professional Billing Agency v. Tarantino*, 350 So.2d 258 (La.App. 4th Cir. 1977), the plaintiff, a collection agency, contracted with the defendant doctor for the assignment of the defendant's accounts receivable. The agreement contained a repurchase provision which provided that the defendant would pay the plaintiff a fixed percentage in the event the accounts receivable debtor failed or refused to make payment. It further granted the assignee the right in its unrestricted discretion to grant extensions for payment to the debtor. The defendant argued that this latter condition was purely potestative, as the decision to grant extensions of time for payment of the debtor's obligation was determined solely by the assignee's will and that such decisions could result in a failure to collect the indebtedness. The Court held that said clause was not purely potestative because the plaintiff's business was to collect doctor bills and it could be implied that it would employ reasonable efforts to perform such contracts.

More recently, the plaintiff in *Franks v. Louisiana Health Service and Indemnity Co.*, 382 So.2d 1064 (La.App. 2d Cir. 1980) sought to recover hospitalization benefits under a health insurance contract for costs incurred when his children were hospitalized on a doctor's recommendation. The insurance carrier refused coverage relying on a provision of the contract which gave the insurance carrier the right to reject hospital bills if, "in the judgment of the carrier" the treatment was not "medically necessary." The contract also provided that the carrier did not have to accept a physician's judgment as to the need for hospital care. The Court interpreted this provision as imposing on the insurer a duty to act in good faith, to follow reasonable

---

5. For cases where the Courts rejected the argument that performance depended solely on the obligor's will and implied good faith efforts into the condition that the vendee secure a homestead loan in a contract to purchase real estate, see *Guice, supra; Morrison v. Mioton*, 163 La. 1065, 113 So. 456 (1927); *Weingart v. Delgado*,

204 La. 752, 16 So.2d 254 (1943); and for cases where the courts implied reasonable objective standards into the condition, see: *Arkansas Fuel Oil Corp. v. Maggio*, 141 So.2d 516 (La. App. 4th Cir. 1962) and cases cited therein; *D'Arbonne Sewerage, Inc. v. Sanders*, 259 So.2d 417 (La.App. 2nd Cir. 1972).

standards, and to be guided by medical experts in determining which bills to pay.[6]

■ As heretofore stated, this Court interprets the language of Subparagraph 8(d), under consideration herein, as a simple potestative condition since it imposes a duty on the station to act reasonably and in accordance with objective standards prevalent in the television industry. Nevertheless, serious questions of fact remain to be resolved at the trial of this matter as to whether or not the defendant station complied with said duties and standards and therefore, the motion for summary judgment is DENIED.

## CONDITIONS

*Approved 1970 by the American Association of Advertising Agencies National Association of Broadcasters, Station Representatives Association and Television Bureau of Advertising. Such approval does not mean that any parties contracting for television time are obligated to use this form or these conditions.*

Paragraph 1(b) and 1(e) Revised.

The organization contracting for television time covered by this contract (hereinafter called AGENCY) and the station accepting this contract (hereinafter called STATION) hereby agree that this contract shall be governed by the following conditions:

### 1. PAYMENT AND BILLING

(a) STATION will bill AGENCY monthly using the Final Sunday Fiscal Month, unless otherwise provided on the face of this contract.

(b) Payment by AGENCY is due within 30 days after receipt of invoice and affidavit of performance by AGENCY.

(c) Invoices shall contain date and exact time of telecast, length of commercial announcement, cost and if commercial code identifying each commercial announcement was supplied by AGENCY, such code for each commercial announcement.

(d) Invoices shall state that dates and times were taken from the official log, maintained by STATION, as required by FCC regulations. This statement when sworn to by STATION shall be the affidavit of performance and act as proof-of-performance.

(e) AGENCY is acting as agent for a disclosed principal, the Advertiser named on the face hereof ("Advertiser"), including, so long as AGENCY is not insolvent, as Advertiser's agent for making payment on all billings hereunder. However, AGENCY shall be liable for the payment thereof, unless and until AGENCY becomes insolvent, at which time, without relieving AGENCY of liability until Company is paid in full. Advertiser shall be liable to Company and not to AGENCY on all unpaid billings for services rendered by Company hereunder (excluding advertising agency commissions), but only to the extent that Advertiser has not theretofore made payment to the AGENCY thereon, and/or to the extent that Advertiser has theretofore made payment to the AGENCY thereon (i) while knowing that AGENCY has entered into an agreement or arrangement purporting to assign or pledge to a third party monies which may be or become payable by Advertiser to AGENCY, or that AGENCY was in danger of becoming insolvent; or (ii) after receiving notice (together with a current statement of account) from Company that AGENCY is seriously delinquent under this or any other agreement(s) between Company and AGENCY acting on behalf of Advertiser by failing to make payment on billings within 45 days after the end of the month in which service is provided thereunder.

### 2. TERMINATION

(a) Commercial announcements or programs of less than 5 minutes duration may be cancelled by STATION or AGENCY upon 14 days prior notice, but no such cancellation shall be effective until 28 days after start of telecasting hereunder, unless otherwise stated on face of confirmation.

(b) Programs of 5 minutes or more duration may be cancelled by STATION or AGENCY upon such prior notice as stated on the face of confirmation.

(c) If AGENCY cancels contract, earned rates will apply if STATION cancels contract, AGENCY shall have the benefit of the same discounts which it would have earned had it been allowed to complete the contract.

### 3. RENEWAL

(a) Commercial announcements or programs of less than 5 minutes duration may be renewed upon 14 days notice prior to expiration.

(b) Programs of 5 minutes or more duration may be renewed upon such prior notice as stated on the face of confirmation.

### 4. EFFECT OF BREACH

(a) STATION reserves the right to cancel this contract upon default by AGENCY in the payment of bills or other material breach of the terms hereof at any time upon prior notice. Upon such cancellation, all charges for telecasts completed hereunder and not paid shall become immediately due and payable. If STATION cancels by reason of AGENCY's material breach, AGENCY's only liability shall be to pay for telecasts completed hereunder prior to cancellation by STATION.

(b) In the event of a material breach by STATION in performing this contract, AGENCY reserves the right to cancel this contract at any time upon prior notice.

### 5. FAILURE TO TELECAST

(a) If, due to public emergency or necessity, force majeure restrictions imposed by law, acts of God, labor disputes or for

**6.** Counsel for plaintiff has argued that the Louisiana Second Circuit implicitly overruled *Weil, supra,* in deciding the *Franks* case *supra.* We disagree. The two cases can easily be reconciled. In *Weil* the Court correctly interpreted the legal effect of a purely potestative condition as nullifying the obligation so conditioned and not the contract as a whole, as is clearly stated in La.C.C. Art. 2034. Whereas, in *Franks,* the Court interpreted the condition at issue to be a simply potestative condition which according to Art. 2035 is not null. The Courts in both cases gave the proper legal effect to the clauses at issue.

any other cause, including mechanical—or electronic break-downs, beyond STATION's control, there is an interruption or omission of both the audio and video signals of any commercial announcement or program contracted to be telecast hereunder STATION may suggest a substitute time period for the telecast of the interrupted or omitted commercial announcement or program. If no such substitute time period is acceptable to AGENCY, STATION shall allow AGENCY 1) with respect to a program, a pro rata reduction in the time and/or program charges hereunder in the amount of money assigned to the time and/or program charges at time of purchase and 2) with respect to a commercial announcement, a reduction in the time charges equal to the amount of money assigned to the commercial announcement a time of purchase. AGENCY shall have the benefit of the same discounts which would have been earned if there had been no interruption or omission in the telecast.

(b) Failure of either the audio or video signal, but not both, shall entitle AGENCY to a reasonable reduction in the time charges hereunder.

## 6. SUBSTITUTION OF PROGRAMS OF PUBLIC SIGNIFICANCE

(a) STATION shall have the right to cancel any telecast or portion thereof covered by this contract in order to telecast any program which in its absolute discretion, it deems to be of public significance. In any such case, STATION will notify AGENCY in advance if reasonably possible, but where such notice cannot reasonably be given. STATION will notify AGENCY within one business day after such scheduled telecast has been cancelled.

(b) If AGENCY and STATION cannot agree upon a satisfactory substitute day and time, the telecast time so pre-empted shall be deemed cancelled without affecting the rates, discounts, or rights provided under this contract, except that AGENCY shall not have to pay the cancelled STATION charges. However, in such case, if the program substituted by STATION is a sponsored program, STATION shall pay to AGENCY AGENCY's actual non-cancellable live talent cost incurred by AGENCY for the production of a live program (not filmed nor recorded) in the cancelled time, and the reasonable allocated print or rental cost of films or tapes scheduled for the cancelled telecast and not usable for future scheduling.

## 7. RATES AND CHARGES

(a) STATION represents that the rate for time and facilities, named in this contract, is the lowest rate made by STATION for like telecasts at the time this contract is entered into. If at any time during the life of this contract STATION makes a lower rate for like telecasts this contract shall be continued at such lower rate from the effective date of such lower rate.

(b) STATION reserves the right to increase rates, but no such increases shall be applied to telecasts under this contract, or renewal thereof, until three months after notification in writing to AGENCY, including specific rate revisions affecting this contract.

(c) Telecasts of a parent and/or its subsidiary company(ies) within 52 weeks from the date of first telecast under this contract, or from the start of a predetermined contract year, may be combined for discounts.

(d) Terms of combinability of commercial announcements of various lengths, or in various locations, or combinability of programs with commercial announcements, are subject to STATION's published rate card.

## 8. PROGRAM AND COMMERCIAL MATERIAL

(a) Unless otherwise noted on the face of this contract, all program material, excluding commercial announcements, shall be furnished by STATION, and all commercial announcement material shall be furnished by AGENCY. All expenses connected with the delivery of commercial announcements to STATION, and with return therefrom, if return is directed, shall be paid by AGENCY.

(b) STATION is required to advise AGENCY by collect telegram if AGENCY furnished program or commercial material and Scheduling Instructions do not arrive 72 hours in advance of telecast date. If such material and instructions do not arrive at STATION within 48 hours after STATION has notified AGENCY, STATION may bill AGENCY for the time reserved. STATION will exert all reasonable effort to telecast material received from AGENCY despite late receipt.

(c) If, due to public emergency or necessity, force majeure, restrictions imposed by law, acts of God, labor disputes or for any other cause beyond AGENCY's control, AGENCY cannot provide commercial and/or program material prior to scheduled telecast hereunder, AGENCY shall not be liable to STATION. In such event STATION shall suggest a substitute day and time period for telecast of said commercial and/or program material. If no such substitute day and time period is mutually agreed upon, STATION shall credit AGENCY for the time and/or program charges hereunder in the amount of money assigned to the time period and/or program at time of purchase. AGENCY shall have the benefit of the same discounts which would have been earned if the commercial announcement and/or program had been telecast.

(d) Television program and commercial material provided by AGENCY is subject to STATION approval and STATION may exercise a continuing right to reject such material including a right to reject for unsatisfactory technical quality.

In the event the program material is unsatisfactory, STATION shall notify AGENCY by collect telegram, and unless AGENCY furnishes satisfactory material by 72 hours in advance of telecast, STATION shall have the right to substitute its own program at no penalty to AGENCY. In the event the commercial material is unsatisfactory, STATION shall notify AGENCY by collect telegram, and, unless AGENCY furnishes satisfactory material 24 hours prior to telecast time, this contract may be terminated by either party without penalty to either party.

## 9. TELECAST LIABILITIES

STATION agrees to hold and save AGENCY and Advertiser harmless against all liability resulting from the telecast of (1) program material except program material furnished by AGENCY and (2) musical compositions licensed for telecasting by a music licensing organization of which STATION is a licensee. AGENCY agrees to hold and save STATION harmless against all liability resulting from the telecast of commercial material or program material furnished by AGENCY except musical compositions licensed as stated above.

## 10. GENERAL

(a) STATION shall exercise normal precautions in handling of property and mail, but assumes no liability for loss of or damage to program or commercial material and other property furnished by AGENCY in connection with telecasts hereunder. STATION will not accept or process mail, correspondence, or telephone calls in connection with telecasts except after prior approval.

(b) This contract, including the rights under it, may not be assigned or transferred without first obtaining the consent of STATION in writing; nor may STATION be required to telecast hereunder for the benefit of any other Advertiser than the one named on the face of this contract. Failure of STATION or AGENCY to enforce any of the provisions herein shall not be construed as a general relinquishment or waiver as to that or any other provision.

(c) STATION's obligations hereunder are subject to the terms and conditions of licenses held by it and to applicable federal, state and local laws and regulations.

(d) This contract contains the entire agreement between the parties relating to the subject matter herein contained, and no change or modification of any of its terms and provisions shall be effective unless made in writing and signed by both parties.

COPYRIGHT NOTICE
Any change in the copyrighted Conditions must be clearly and conspicuously noted on the face of the form.
Copyrighted November 1970, American Association of Advertising Agencies, Inc.